UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MCREDIT, INC., ET AL.,                    :
     Plaintiffs,                         :
                                        :         CIVIL ACTION NO.
v.                                        :         09-cv-394 (JCH)
                                        :
CITY OF WATERBURY,                        :         AUGUST 31, 2009
     Defendant.                          :

**RULING RE: PLAINTIFFS' MOTION TO REMAND (DOC. NO. 10),
DEFENDANT'S MOTION TO STAY (DOC. NO. 12),
DEFENDANT'S MOTION TO TRANSFER (DOC. NO. 13), AND
PLAINTIFFS' MOTION FOR LEAVE TO AMEND (DOC. NO. 19)**

**I.      INTRODUCTION**

Plaintiffs TSVP 1998-1, LLC and TaxServ Capital Services, LLC (together the

"TaxServ plaintiffs" or "plaintiffs") have two motions pending.  The first, a Motion to

Remand pursuant to 28 U.S.C. §§ 1447(c) and 1452(b), seeks: (1) to remand this case

to the Connecticut Superior Court Complex Litigation Docket; and (2) an award of costs

and fees incurred in connection with the Motion to Remand.  The second, a Motion for

Leave to Amend Complaint, seeks to remove from plaintiffs' Amended Complaint the

prayer for equitable relief which caused the removal of this case.

Defendant City of Waterbury (the "City") opposes both Motions.  It argues, inter

alia, that: (1) plaintiffs' proposed Second Amended Complaint does not eliminate the

basis of federal jurisdiction upon which removal was premised; and (2) even if plaintiffs'

amendment does eliminate the basis for removal, plaintiffs cannot defeat federal

jurisdiction by amending their Amended Complaint to excise the federal claim.  For the

following reasons, the plaintiffs' Motion for Leave to Amend (Doc. No. 19) is granted

and their Motion to Remand (Doc. No. 10) is granted in part and denied in part.

## II.    BACKGROUND

### A.    Facts

This suit arises out of a contract originally between the City of Waterbury, a Connecticut municipality, and Capital Asset Research Corporation, Ltd. ("CARC"). See Plaintiffs' Memorandum in Support of Motion to Remand ("Remand Mem. in Supp.") (Doc. No. 11) at 2. The contract, the Municipal Revenue Assurance and Management Services Agreement ("MRA Agreement"), was executed by the City and CARC on April 28, 1998, pursuant to a pilot program created by a Special Act of the Connecticut Legislature designed to assist municipalities in collecting current and delinquent real estate and personal property taxes. See id.; see MRA Agreement, Exh. A to Amended Complaint (Exh. B to Notice of Removal (Doc. No. 1)). Under the MRA Agreement, CARC was to serve as a third-party agent acting under the direction of the Waterbury Tax Collector to assist in the collection of all current and delinquent taxes due the City. See Remand Mem. in Supp. at 2. Specifically, the City was to assign certain real estate tax liens and personal property and motor vehicle tax accounts to CARC for collection. See id.

On or about January 25, 1999, an entity called Anagram Business Services, Inc. ("Anagram") purchased from CARC its interests, rights, and responsibilities under the MRA Agreement – thus becoming the private participant to the pilot program in Waterbury – and took assignment of numerous real estate tax liens and personal property and motor vehicle tax accounts which had been assigned to CARC. See id. at 2-3. Anagram financed this purchase through secured loans with various lenders,

including, inter alia, Transamerica Business Credit Corporation (now known as MCredit, Inc.)[1] and Varde Partners, LP.  See id. at 3.

On January 28, 2000, Anagram and certain of its affiliates filed voluntary Chapter 11 petitions in the United States Bankruptcy Court for the Southern District of Florida (the "Anagram Bankruptcy Proceeding").  See Affidavit of James Paul, Esq. ("Paul Affidavit") (Doc. No. 11-5) at ¶ 4.  Prior to the bankruptcy filing, Anagram claimed that the City had failed to comply with its obligations under the MRA Agreement, which failure necessitated the bankruptcy filings.  See Remand Mem. in Supp. at 3.

In late 2001, an agreement[2] concerning the Anagram Bankruptcy Proceeding was reached between Anagram, Anagram's affiliates, the City of Waterbury, MCredit Inc., the TaxServ plaintiffs, and various other parties.  See id.  Pursuant to this agreement: (1) Anagram assigned to MCredit, Inc. certain tax liens and accounts upon which its predecessor, Transamerica Business Credit Corporation, had a secured interest; (2) Anagram assigned to TSVP 1998-1, LLC ("TSVP") certain tax liens and accounts upon which Varde Partners, LP had a secured interest; and (3) TaxServ was selected to be substituted for Anagram as the third-party agent under the MRA Agreement and to act as servicer for TSVP, MCredit, Inc., and certain other assignees of Anagram.  See id. at 3-4.  The assignment of Anagram's rights and interests in and to the tax liens and accounts now owned by TSVP and MCredit, Inc. and serviced by

---

[1] MCredit, Inc., originally a plaintiff in this suit, was terminated as a party on June 1, 2009, following a voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1).  See Doc. Nos. 26, 27.

[2] The agreement was memorialized in a number of written contracts which the court will refer to collectively as the "Settlement Documents."  See Amended Complaint, Exh. B to Notice of Removal (Doc. No. 1) at ¶ 13.

TaxServ was approved by the bankruptcy court on or about October 25, 2001.  See id. at 4.

On or about August 8, 2002, the bankruptcy court confirmed the debtors' Third Amended Joint Plan of Reorganization in the Anagram Bankruptcy Proceeding.  See Paul Affidavit at ¶ 6.  The Anagram Bankruptcy Proceeding was closed on July 10, 2003.  See id. at ¶ 7.

B.    Procedural History

On September 1, 2005, MCredit, Inc., TSVP, Varde Partners, LP, and TaxServ brought suit against the City of Waterbury in the Connecticut Superior Court for the Judicial District of Waterbury, advancing causes of action for breach of contract, breach of implied covenant of good faith and fair dealing, specific performance, declaratory judgment, and fraud in the inducement, all under Connecticut Law.  See Complaint, Exh. B to Remand Mem. in Supp. (Doc. No. 11).  Plaintiffs alleged that the City failed to satisfy numerous obligations under the MRA Agreement (as modified by the Settlement Documents) and failed to cooperate in a variety of tax collection-related matters.  See id.  On June 25, 2008, the Superior Court granted plaintiffs' application to transfer the case to the Complex Litigation Docket.[3]

On December 15, 2008, the TaxServ plaintiffs filed a motion to amend their Complaint.  See Remand Mem. in Supp. at 6.  The court granted the Motion to Amend on February 10, 2009, and plaintiffs amended their Complaint by, inter alia, adding to

_____

[3] According to plaintiffs, the litigation was stayed between approximately February 2006 and May 16, 2008, while the parties mediated the dispute.  Mediation was ultimately unsuccessful.  See Remand Mem. in Supp. at 6 n.4.

the prayer for relief a request for the of rescission of certain Settlement Documents.[4]
See id.

On March 10, 2009, the City removed this action to the United States District
Court for the District of Connecticut pursuant to 28 U.S.C. §§ 1334, 1441, 1446, and
1452.  See Notice of Removal (Doc. No. 1).  In its Notice of Removal, the City asserts
that, because plaintiffs seek rescission of certain Settlement Documents, this case is a
civil proceeding arising under title 11 of the United States Code, or arising in or related
to a case under title 11, and therefore this court has original jurisdiction over the
proceeding.  See id. at ¶ 9.  On April 7, 2009, the TaxServ plaintiffs filed a Motion to
Remand, arguing, inter alia, that: (1) the City's Notice of Removal was untimely; (2) this
court lacks subject matter jurisdiction because this case does not arise under title 11 or
arise in or relate to a case under title 11; (3) this court is required to abstain from
hearing this proceeding pursuant to 28 U.S.C. § 1334(c)(2); and (4) this court should
abstain from hearing this proceeding pursuant to 28 U.S.C. 1334(c)(1).  See Motion to
Remand (Doc. No. 10).  The City opposes this Motion.  See Objection to Motion to
Remand (Doc. No. 17).

On May 8, 2009, the TaxServ plaintiffs filed a Motion for Leave to Amend
Complaint, seeking, inter alia, to delete the request for rescission contained in the
prayer for relief of their Amended Complaint.  See Motion for Leave to Amend

---

[4] Specifically, plaintiffs Amended Complaint seeks: "On the Fifth Count for fraud, money
damages, punitive damages, attorneys' fees and costs, and/or rescission of the agreement."  See
Amended Complaint (Exh. B to Notice of Removal (Doc. No. 1) at Prayer for Relief ¶ 5.  Plaintiffs admit
that the Amended Complaint does not specify precisely which agreement they seek to rescind.  See
Motion for Leave to Amend (Doc. No. 19) at 4.

Complaint (Doc. No. 19).  The City opposes this Motion on the ground that, even if the Motion was granted, plaintiffs could merely reinstate the request for rescission in state court, thereby ensnaring this action in a perpetual cycle of removal and remand.  The City, however, notes that it would have no objection to the Motion to Amend if the request for rescission was eliminated with prejudice to plaintiffs reinvoking such request in this action.  <u>See</u> Objection to Motion to Amend (Doc. No. 24) at 5.

### III.    DISCUSSION

      A.    <u>Plaintiffs' Motion for Leave to Amend</u>

The TaxServ plaintiffs seek to amend their Amended Complaint for two purposes: (1) "to delete the request for equitable relief of rescission contained the prayer for relief"; and (2) "to correct and/or clarify certain of the factual allegations contained in the existing complaint."  <u>See</u> Motion for Leave to Amend (Doc. No. 19) at 1.  The City does not object to plaintiffs' correction or clarification of certain factual allegations, but objects to the Motion because of its belief that, "the way the proposed Second Amended Complaint is currently worded, the remedy of rescission is not completely eliminated."  <u>See</u> Objection to Motion for Leave to Amend (Doc. No. 24) at 1.  Consequently, the court focuses its analysis on the proposed deletion of the request for rescission.

The TaxServ plaintiffs assert that their proposed Second Amended Complaint affirmatively withdraws their request for rescission and therefore, "unless [they] specifically seek to re-incorporate a request for such relief through a subsequent amendment of the complaint, they do not intend to and will not seek rescission."  Plaintiff's Reply to Defendant's Objection to Motion for Leave to Amend ("Motion for

Leave Reply") (Doc. No. 28) at 3.  The City, on the other hand, argues that: (1) because the prayer for relief in plaintiffs' proposed Second Amended Complaint contains a request for "[s]uch other and further relief as the Court deems just and proper," plaintiffs may later contend that rescission is an available remedy;[5] and (2) unless the request for rescission is eliminated with prejudice to the reinstatement of such request, nothing precludes plaintiffs from seeking to reinstate the request for rescission at some later date, thereby reviving the question of federal jurisdiction.  The court agrees.

The principal reason the TaxServ plaintiffs seek to amend their Amended Complaint is to cause this case to be remanded to state court.  As they explain in their Motion for Leave to Amend:

> The TaxServ plaintiffs have always recognized the potential practical challenges of the remedy of rescission in this case, but they specifically requested such relief in their Amended Complaint so they would not be precluded from seeking rescission, if appropriate, under their claim of fraud in the inducement.  In light of the potential difficulties of such relief, however, coupled with the substantial delay and cost it has engendered by the City's unanticipated removal and motion to transfer, the TaxServ plaintiffs now seek to eliminate the issue at this time so that the parties can focus on the substantive issues in this case . . . .

Motion for Leave to Amend (Doc. No. 19) at 5.  Despite their current desire to eliminate their request for rescission, however, the TaxServ plaintiffs wish to retain the ability to revive such request in the future.  See Motion for Leave Reply (Doc. No. 28) at 3-4 ("[T]here is no reason that the fraud claim should not be heard by the state court.  If and when the TaxServ plaintiffs prevail on the fraud claim, only then will the court address

---

[5] In fact, the TaxServ plaintiffs advanced such an argument in their Memorandum in Support of Motion to Remand.  See Remand Mem. in Supp. (Doc. No. 11) at 6 ("[T]he equitable relief of rescission of the contracts between the TaxServ plaintiffs and the City . . . could have been granted by the court under the original prayer for relief (which requested, inter alia, '[s]uch other and further relief as the Court deems just and proper')").

the appropriate remedy.  If . . . the TaxServ plaintiffs then reassert their request for rescission, the City can seek to remove the case to federal court").  In this, they ask too much.

When the TaxServ plaintiffs filed a motion to amend their Complaint in state court on December 15, 2008, they made a strategic decision to pursue the rescission of certain agreements which, it could be argued, were related to the Anagram Bankruptcy Proceeding.  In doing so, they opened the door to the City's removal of this suit to federal court.  After the City removed the case on March 10, 2009, the TaxServ plaintiffs filed a Motion to Remand on April 7, 2009, arguing that, inter alia, this court lacks subject matter jurisdiction over the action.  On April 28, 2009 the City filed an Objection to the Motion to Remand which responded to plaintiffs' procedural and substantive arguments in detail.  Now, having gained familiarity with the case, the parties' briefs, and the matters of contention, the court is prepared to address the issues raised by plaintiffs' Motion to Remand.  Thus, if there is ever a proper time for a district court to take up the question of federal jurisdiction in this case, that time is now.

The TaxServ plaintiffs, however, seek to eliminate the need for the court to address the question of federal jurisdiction by striking the request for rescission from their Amended Complaint.  Moreover, they seek to do so in a manner which would allow them to later reinstate that request.  Thus, in essence, plaintiffs ask the court to negate the efforts the parties and the court have undertaken in connection with the Motion to Remand, while at the same time ensuring that plaintiffs retain the capability to force the City and the court to duplicate those efforts at some future date.  Plaintiffs' proposed course of action would not only set the stage for the inefficient use of scarce court

resources, but would also invite behavior by plaintiffs which would unduly delay the resolution of this dispute, unduly prejudice the City, and improperly manipulate the jurisdiction of the court.  Accordingly, this court will not grant plaintiffs' Motion for Leave to Amend while there is a possibility plaintiffs will reclaim their request for rescission in state court.

Nevertheless, the court recognizes that, under Fed. R. Civ. P. 15(a), amendments to pleadings should be liberally allowed.  Leave to amend is not automatic, however, but rather is within the sound discretion of the court.  See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) ("Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend").  In this case, the court concludes that the general rules of liberally allowing amendments to pleadings should not be disturbed.  The court further concludes, however, that, because they are relinquishing their request for rescission in order to effect a remand, justice requires that plaintiffs be precluded from pursuing rescission in this case at a later date.  As a result, plaintiffs' Motion for Leave to Amend (Doc. No. 19) is granted on the condition that plaintiffs will not pursue the rescission of any Settlement Documents, as defined in plaintiffs' Amended Complaint, in this action.[6]  See Amended Complaint, Exh. B to Notice of Removal (Doc. No. 1) at ¶ 13.

---

[6] At oral argument, plaintiffs' counsel, while preserving his objection, agreed to elect remand rather than preserve plaintiffs' right to seek to re-amend to add a rescission remedy.

B.      Plaintiffs' Motion to Remand

        1.      Remand

As the City acknowledges in its Objection to plaintiffs' Motion to Remand, this action only became removable once plaintiffs amended their Complaint to add a request for rescission.  See Objection to Motion to Remand (Doc. No. 17) at 6 ("The action became removable once [the TaxServ plaintiffs] requested rescission . . .").  Because the court has granted plaintiffs' Motion to Amend, plaintiffs' Second Amended Complaint no longer contains the request for rescission.  Moreover, for the reasons set forth above, see supra 6-9, plaintiffs will not seek rescission of any Settlement Documents in this action.  Consequently, plaintiffs argue, because the sole claim upon which removal was premised has been eliminated, the case should be remanded to state court.  The court agrees.

The City is correct in noting that courts generally look unfavorably on a plaintiff's attempts to defeat federal jurisdiction in a removed case by amending its complaint to excise the federal claims.  See, e.g., Bennett v. Beiersdorf, Inc., 889 F. Supp. 46, 48 (D. Conn. 1995) ("[I]t is quite clear from the fact that plaintiff filed a motion for remand at the same time as the motion to amend, and that the motion to remand is based in part on lack of subject matter jurisdiction, that she is attempting to drop her federal claim in order to return to state court.  This is not an acceptable maneuver").  The reason for the general rule is obvious:

> When a plaintiff chooses a state forum, yet also elects to press federal
> claims, he runs the risk of removal. A federal forum for federal claims is
> certainly a defendant's right.  If a state forum is more important to the plaintiff
> than his federal claims, he should have to make that assessment before the
> case is jockeyed from state court to federal court and back to state court.

> The jockeying is a drain on the resources of the state judiciary, the federal judiciary and the parties involved; tactical manipulation [by the] plaintiff . . . cannot be condoned.

Id. (quoting Boelens v. Redman Homes, Inc., 759 F.2d 504, 507 (5th Cir. 1985)).  In this case, however, the court concludes that retaining jurisdiction over this case would lead to the very drain on resources and prejudice to the litigants the general rule is meant to avoid.  That is, given that the court has granted plaintiffs' Motion for Leave to Amend (thereby excising the only claim which arguably implicated federal jurisdiction), and given that the Superior Court has significant familiarity with this case, denying plaintiffs' Motion to Remand would not comport with the interests of judicial economy, convenience, or fairness.  See Kidder, Peabody & Co. v. Maxus Energy Corp., 925 F.2d 556, 563 (2d Cir. 1991) ("The decision whether to exercise pendent jurisdiction is within the discretion of the district court.  In exercising that discretion, a district court is required to 'consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction'") (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

Plaintiffs filed their five-count Complaint, which included only state law claims, on September 1, 2005.  On June 25, 2008, the case was transferred to the complex litigation docket.  Over the next 36 weeks, the Superior Court gained considerable familiarity with this case as a result of: (1) conducting a multi-day evidentiary hearing on the City's unsuccessful motion to enforce an alleged settlement; (2) holding a hearing on, and entering, a detailed scheduling order which included discovery deadlines and a trial date; and (3) hearing oral argument on, and deciding, a number of discovery

disputes.  See Plaintiffs' Supplemental Memorandum of Law in Support of Motion to

Remand ("Supp. Remand Mem.") at 4-5.  Further, when plaintiffs amended their

Complaint in February 2009, plaintiffs' actual claims against the City remained, for the

most part, unchanged.  That is, while plaintiffs, inter alia, added a request for

rescission, clarified and expanded certain factual allegations, and added a request for

mandatory injunction, they did not alter their causes of action or the basic facts upon

which those causes of action were premised.  As a result, the Superior Court's

familiarity with this case (a familiarity which far outweighs that of this court) was not

rendered obsolete by plaintiffs' amendment.  Therefore, if this court were to find that it

had original jurisdiction over plaintiffs' Amended Complaint at the time it was removed

and retained this case despite the dismissal of the only provision which implicated

federal jurisdiction, the benefit of the Superior Court's substantial efforts would be lost.

The consequence of this loss would be the expenditure of increased resources by both

the parties and the court, and a delay of the adjudication of this action.  Consequently,

the court concludes that, in this case, the interests of judicial economy, fairness, and

convenience weigh in favor of remand.  Accordingly, plaintiffs' Motion to Remand (Doc.

No. 10) is granted insofar as it seeks to remand this case to the Superior Court,

Complex Litigation Docket, in Waterbury, Connecticut.

    2. Attorney Fees and Costs

  In their Motion to Remand, the TaxServ plaintiffs seek "just costs" and "actual

expenses, including attorney fees," incurred as a result of the City's removal of this

case. 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just

costs and any actual expenses, including attorney fees, incurred as a result of the

removal"); see Remand Mem. in Supp. at 22.  The City contends that plaintiffs are not

entitled to an award of costs and expenses because the City had an objectively

reasonable basis for removal, namely, its belief that this court has original jurisdiction

over the relief plaintiffs requested under Count Five of their Amended Complaint (i.e.,

the rescission of certain Settlement Documents) because such request constitutes a

civil proceeding arising under title 11, or arising in or related to the Anagram Bankruptcy

Proceeding, as set forth in 28 U.S.C. § 1334(b).  The court agrees.

"Absent unusual circumstances, courts may award attorney's fees under §

1447(c) only where the removing party lacked an objectively reasonable basis for

seeking removal."  Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).  While

the court takes no position on the ultimate question of whether it has original jurisdiction

over Count Five of plaintiffs' Amended Complaint, the court concludes that for the City

to argue as much is not objectively unreasonable.  As expressed in the Amended

Complaint, the prayer for relief for Count Five seeks the rescission of at least one of the

Settlement Documents which emerged from the Anagram Bankruptcy Proceeding.[7]  In

its Order approving the Settlement Documents, the Bankruptcy Court considered the

Settlement Documents collectively, and made clear that the parties to the agreements

memorialized in the Settlement Documents (i.e., entities with an interest in the Anagram

_____

[7] The Amended Complaint does not specify which of the Settlement Documents plaintiffs seek to rescind.  According to plaintiffs: "Although the Amended Complaint admittedly does not specify precisely which agreement the TaxServ plaintiffs seek to rescind, it is axiomatic that the plaintiffs could not seek to rescind agreements between entities that are not parties to this lawsuit.  Rather, the primary document for which the TaxServ plaintiffs sought to have the option of seeking rescission was the Second Modification (as that term is defined in paragraph 17 of the Amended Complaint) between TaxServ and the City."  Motion for Leave to Amend (Doc. No. 19) at 4 (emphasis in the original).  As of the date of this Ruling, plaintiffs still have not indicated whether the Amended Complaint seeks to rescind Settlement Documents other than the Second Modification, and if so, which document(s).

-13-

Bankruptcy Proceeding) negotiated those documents in order to resolve all claims among them.  See Bankruptcy Court Order, Exh. B to Affidavit of Theresa Caldarone (Doc. No. 17-3) at 8.  Further, the Bankruptcy Court ordered that the transactions that were the subject of the Settlement Documents "be incorporated into any chapter 11 plan confirmed in the Debtor's chapter 11 cases."  See id. at 12.  Consequently, it was not objectively unreasonable for the City to contend that plaintiffs' request for rescission constituted a civil proceeding arising under title 11, or arising in or related to the Anagram Bankruptcy Proceeding, as set forth in 28 U.S.C. § 1334(b).  This is true especially given that, until plaintiffs' filed their Motion for Leave to Amend, the City did not know definitively which Settlement Document(s) plaintiffs' sought to rescind.  As a result, plaintiffs are not entitled to costs and expenses under 28 U.S.C. § 1447(c), and the Motion to Remand is denied insofar as it seeks such award.

     C.     Defendant's Motion to Stay and Motion to Transfer

     On April 9, 2009, the City filed a Motion to Transfer the Fifth Count of plaintiffs' Amended Complaint to the United States District Court for the Southern District of Florida for automatic referral to the Bankruptcy Court in that district, and a Motion to Stay the First through Fourth Counts of plaintiffs' Amended complaint until such time as the Bankruptcy Court in Florida is able to adjudicate the Fifth Count.  On April 28, 2009, this court granted plaintiffs' Motion for Extension of Time to respond to the City's Motions until 21 days after a decision on plaintiffs' Motion to Remand.  See Order (Doc. No. 16).  However, in light of the granting of plaintiffs' Motion for Leave to Amend and the granting in part of plaintiffs' Motion to Remand, as set forth herein, the City's Motion to Stay (Doc. No. 12) and Motion to Transfer (Doc. No. 13) are denied as moot.

-14-

**IV.     CONCLUSION**

For the foregoing reasons, plaintiffs' Motion for Leave to Amend Complaint (Doc. No. 19) is **GRANTED**, pursuant to the condition that plaintiffs will not pursue the rescission of any Settlement Documents in this suit.  Accordingly, plaintiffs' Motion to Remand (Doc. No. 10) is **GRANTED** insofar as it seeks to remand the case and **DENIED** insofar as it seeks costs and expenses.  Defendants' Motion to Stay (Doc. No. 12) and Motion to Transfer (Doc. No. 13) are **DENIED** as moot.  The Clerk is directed to remand this case to the Connecticut Superior Court, Complex Litigation Docket, in Waterbury, Connecticut.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 31st day of August, 2009.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge

-15-